Thank you and good morning. May it please the court, my name is Jeffrey Rother. I'm with Morningstar Law Group and we represent the appellant Epcon Homestead, LLC. I'm asking to reserve five minutes for rebuttal. The question before the court today primarily is whether the district court erred in its determination of the accrual date of Epcon's claim under 42 U.S.C. 1983. Epcon was the owner and developer of a residential real estate project in the town of Chapel Hill. Epcon's claim arises from an affordable housing fee payments that were made to the town as required to receive certificates of occupancy for homes that were constructed in Epcon's development. Following the payment of those fees, Epcon filed suit for their return. In addition to state law claims, what's before the court today is claim under 42 U.S.C. 1983. The claim is premised on a taking of Epcon's property without just compensation in violation of the takings clause and a government deprivation of Epcon's property in violation of its right to subsidize due process. The district court dismissed the claim under Rule 12b-6 on the grounds that those claims are barred by a three-year statute of limitations. The court concluded that Epcon and its affiliates knew of their alleged injury in October of 2014 when the town issued a special use permit which quantified the amount of fees that would be due when the homes were finished. The court's view was that that time that the claim accrued because Epcon could foresee its future obligations. And why couldn't it foresee its future obligations to make the payment? Well, it could certainly foresee its obligations. So then why was it not aware of its injury at that time? The difference is the district court did not distinguish between anticipated and actual injury. And that's the standard that's at play here. An expectation of a future injury is not relevant. The Supreme Court has made clear that accrual occurs when the plaintiff has a complete and present cause of action. That factual and legal prerequisites for filing must be in place. The 1983 claim at issue here is under the Takings Clause and a violation of substantive due process and both require a deprivation of property. It was not until those fees were paid that Epcon actually was taken of its property without just compensation. And it wasn't until those fees were paid that it was actually deprived of its property. An expectation of losing your property in the future without just compensation or without due process of law is not sufficient to bring a claim for violation of those constitutional rights. If Epcon were to have sued for money damages before it paid those fees, the town certainly would have argued that those claims were not ripe and that Epcon had not sustained any injury at that time. Moreover, the Supreme Court recently clarified in Nick that a 1983 claim generally is not available for injunctive relief to prevent a taking because a monetary remedy through 1983 is available after it occurs. So although perhaps the injury was foreseen and perhaps a declaratory judgment claim could have been made, it wasn't until that property was taken that a 1983 claim, the claim that's at issue here, was available to be brought. That is the time in which it accrued. When did they become obligated to pay the fees? I know the permit issued before they owned the property, but was it once they owned it or once they started building? And I realize we're here just on a complaint, so if the answer is the complaint doesn't say or, you know, let me know. The special use permit is attached to the complaint incorporated by reference. The obligation to pay the fee arose as a condition of receiving certificates of occupancy. And that's on every seventh house? Correct. The certificate of occupancy is after a home is built, the government needs to review it, inspect it, and make sure that everything is okay for someone to live in it. So it was not until such time that they were asking for someone to live in these houses that the fee was paid. So it was made a future condition of receiving those future certificate of occupancy permits. Were they allowed to start building? I guess I'm wondering, there was no obligation to pay until the seventh house was done and you wanted a certificate of occupancy, but were they allowed to start building house number one without having, you know, promised to pay in the future? Certainly, Your Honor, it's alleged in our complaint that construction began and the fees were paid afterwards, after the homes were built, in order to obtain those certificates of occupancy. It's certainly not in the complaint. I'm not aware of any bonding or any other obligation that they became on the hook. When did your client agree to pay? I'm sorry, sir. When did you agree to pay? There was no agreement to pay, Your Honor. There wasn't? There wasn't? You didn't proffer in terms of your perspective development that we're going to do this and such we'll be able to buy down the normal requirement to make homes affordable to certain people. You can pay extra money. Didn't you agree to do that at some point way before they started building those homes? It was a choice, Your Honor. I know. And that's what I'm asking. When did you make the choice? The choice of one of Epcon's affiliates was made at the time of the special use permit proceedings, and that was in 2014, I believe is the date. The special use permit was in October of 2014. So at that point you were injured because you were forced. Now you're telling us to endure these harms because it's more than money because you could have just made a money claim. You could do that, but you're making a 1983 constitutional claim. In your injury when they said, you didn't mean to tell me. I got to agree to this extra money just to make sure that people, you know, you don't have to have these affordable homes if you pay this extra money. Weren't you harmed then? No, sir, and I'll explain why. Why not? Because the special use permit is permission to move forward. It's not an obligation to move forward. Land development in particular is full of contingencies and uncertainties, and we all saw that in 2008. At the time they received that permit, they received permission from the town to move forward to build this development. That goes back to Judge Rushing's question. They didn't have permission to start building, it sounds like,  they had a special use permit that provided them the opportunity to build this development. And under the town ordinance, they had a choice. They could have dedicated land, they could have sold affordable units to certain classes of people, or they could have given up money. In either such circumstance, it was a future obligation to give property to the government or to someone the government has identified, which is a per se taking under this court and the Supreme Court's jurisprudence. And to get back to Judge Gregory's point, this area of business in particular is full of contingencies and uncertainties. The market could have crashed, and this land could have laid there without development for years, and it could have been sold, it could have been redeveloped, it could have been rezoned for a different use. These special use permits have a two-year life. If they didn't start building in two years, the permit expired, it could have gone to a different use, it could have been sold to someone else. In all of those scenarios, no fee would ever have been paid, no dedication would ever have been required, there would have been no loss. And the accrual standards, whether it's under 1983 or across the board, recognizes the difference between these anticipated and actual injuries. In a contract case, a party can be aware that it has a dispute about a future obligation with its contractual counterparty, but it's not until there's a breach and there's an injury does that claim accrue. If you have an injury with real estate, for example, and someone tells you, you know, you own the lot and you want to build your house, and they tell you, well, wait a minute, you can build this lot, but you have to put up a six-foot stone wall around the back of your property. And you haven't paid for it yet, but when you go to your lender, you have to factor that additional cost in, and they say, wait a minute, well, you're above your budget now. We are okay this with this, but now the wall comes in and it's going to cost another $20,000. That's injury, isn't it? And you haven't paid a dime, because am I right or wrong? I think you're wrong, Your Honor. Okay, tell me why. In your scenario of something with the land, and it requires to be built on the land in order for it to be developable for a single family or something like that, I can see that. That cost has to be anticipated. I'm wrong, because you can see that, but you can't say no. A buyer will know that that improvement has to be made. But here we're talking about an obligation for a specific use, a specific housing development that EPCON proposed to build on this property. If the property is going to be developed for retail or industrial, for example, there would be no obligation for this fee payment. If someone wanted to buy this large lot for their mega mansion  there are multiple scenarios where this land could have been used in a way that would not have triggered these obligations to the town. And that goes to the point, the fact that EPCON chose to use the property in this way does not make it some way that they're consenting to the loss of their constitutional rights. I mean, the Supreme Court case in Horn Department of Agriculture explained recently that businesses cannot be required to give up property as a condition of entering the marketplace. And that's certainly what has happened here. The fact that EPCON chose to build once it knew of this obligation does not affect necessarily the nature of its claim or when that claim occurred. It wasn't until there was an actual deprivation of property without due process of law, without just compensation, that its claim for monetary damages accrued. And what I'm arguing before this Court is nothing new. The Court has applied this principle in the context of 1983 cases arising from government development fees. The Tommy Davis construction case that's in our brief, the Court stated without any need for further discussion that a 1983 claim for the recovery of fees accrues the time those fees are paid. And that makes sense because that's the time that the government deprived the plaintiff of their property. It said in this case, the period began when Davis Construction paid the impact fees. The city's case or the town's cases are inequitable because they're different types of cases. The town and the district court failed to distinguish between two types of cases that arise on a takings clause. There are regulatory takings cases in which the government deprives a property owner of the present use of the property where the allegation is that the property itself has been taken for inability to use it versus the type of claim that we're making here, which is a per se taking for the appropriation of property for the government or for someone else. And the distinction between those two types of claims is important because it dictates at the time the claim accrues. In a regulatory taking case, the alleged injury is to the value of the property. So once the regulation is finite and known and the government takes its position, that is the time that the property is injured. Here in a per se taking case, no claim accrues and there's no alleged violation of the takings clause until such time that the property is actually taken. The national advertising case that the town cites and the district court cites is a very different matter. It was a nonconformity case where there's an ordinance that required a billboard owner to either take down its billboard or to change it to comply within five and a half years. And the town says, well, look, this case is exactly the same because they foresaw that that five and a half year period would happen and it's the same situation here. It's not because that ordinance in national advertising impacted the present use of the property and the value of that property at the time the ordinance was enacted. The alleged injury of a regulatory taking and the ordinance application happened at the time the ordinance was enacted, not in the future here where the per se taking only occurred later in the future within three years of the time that Epcon filed its claim. So I see that I'm running out of time. Unless the court has any additional questions, I am going to ask to reserve five minutes. Just before you sit down, make sure it's clear so the other side can address the question if they need to. So you're saying that this is illegal, requiring this proffer for this purpose is illegal? Yes. Yes, Your Honor. Both under state law, which is not before the court today, and also it's a violation of the Fifth Amendment and the Fourteenth Amendment because it violates the principles under Nolan and Dolan. The court has made clear that there must be a nexus and rough proportionality between the two. And what's the standard review in terms of the constitutional idea, in terms of the taking? Compelling interest, state interest, or strict scrutiny, or what's the standard? The standard under Nolan, Dolan, and Kuntz is that there must be a nexus and rough proportionality between the property that the government is seeking from the permit applicant and the impact to the public that the development is expected to have. Would you agree that adequate housing is a problem in our country? I would. Affordable and adequate housing is a problem in our country. Do you agree with that? I would agree with that, Your Honor. Do you agree that this goes to trying to make homes more affordable to people? I would agree that it is trying to make particular homes more affordable for particular people. Making a housing developer pay roughly $80,000 per unit in order to build more homes doesn't seem like it will reduce the price of other housing. It would only seem to increase it. But to your point, Your Honor, the difference, the Constitution looks at both the means and the ends. And that's made clear in Horn. That's made clear in Cedar Point. That was issued last year. It's that just because the government might have a legitimate end, the Constitution still protects the means to get there. And the Nolan, Dolan, Koontz all make clear that the Takings Clause prohibits government from making particular businesses or particular people bear the costs that society should try to solve on their own. What class of people are you protecting? You said particular people. I'm sorry. I don't understand your question. What class are you, you said, protect, shouldn't put the burden on particular people. So what class of people are you saying are burdened by this? Well, if the town wanted to raise funds for affordable housing, it could certainly increase property taxes and raise revenue through other means. What they've done here is put a condition on housing developers to dedicate property to either the town or to a specific group of people to subsidize housing for those people. Although the town might have ends, an objective or a goal that may be important to the public good, that doesn't mean that they can use whatever means necessary to get there. The town is being Robin Hood. I'm sorry, Your Honor. You're saying the town is like Robin Hood. And that sounds like you're arguing that they're using you to pay for something else for a common good. I think that's right, Your Honor. That's what Robin Hood did to me. I wouldn't use that analogy, but I can see your point. I understand the analogy. I'm trying to follow you, what you're saying, because you're saying that they're trying to put this burden on a particular type of people  So I just want to see what you're saying. Certainly. The point is that there may be a problem. Housing in the town may be too expensive. That's not before the court. That's not part of our pleadings. The point is that no matter what the ends are, whether they're legitimate or illegitimate, the means to get there still must be within the bounds of the Constitution. And they have taken means to get there that imposes a per se taking on residential real estate developers, including EPCON, in a manner that violates the takings clause. Because Nolan and Dolan made clear there must be a nexus and rough proportionality between the government demand for property and the impact that is expected from the development. And to build more housing, housing like anything else, is dictated by supply and demand. My client was building more houses, increasing supply for the town's housing base. That does nothing to increase prices. If anything, it reduces them. So to say that EPCON must pay money or dedicate property or give something to the government for the right to build more houses to help eliminate the problem is exactly the gimmickry that Nolan, Dolan, Koontz, all the cases in this exaction territory state clearly that the government cannot do. Okay. Thank you so much. Thank you. Mr. Hartog. Thank you, Your Honors. Good morning. May it please the Court, Dan Hartog, Jr., on behalf of the town of Chapel Hill, the appellant in this matter. Your Honors, this is a case that is essentially an unconstitutional conditions case. He says you violated the Constitution. That's their claim, Your Honor. And that's why I want you to speak to it. He said that's what you've done and the cases are clear. Well, that is certainly their claim. And I'm asking you now to respond to it. Get to that. I don't believe we have violated the Constitution. I believe this is a valid use of land use. And as we've said in our brief, density and affordable housing is certainly an important government interest. What the town of Chapel Hill is attempting to do here is to make sure that affordable housing is available for its workers and other people who live in the town. And supply and demand is the issue here, and supply is limited. Land is limited. Housing is limited. Explain to me how those ends are accomplished in charging this profit in these circumstances here. Just tell me how that's accomplished. The way the program works, Your Honor, is anyone who develops a certain number of single-family houses, I think it's above five, is required to dedicate a certain portion of those to low-cost housing. Or, and the alternative to doing that, they can pay a fee in lieu that the town can use to make affording housing. Help me with that. Let's say if the average house they were going to build, and this is a hypothetical, the average house they were being built in this development proposed is $500,000. And let's say they didn't pay the premium to be exempt from this requirement and they did have the seventh house.  I don't have the exact price, Your Honor. I mean, I'm just, well, how does it work? How much is it reduced? In other words, you say you're making it affordable, low-cost. I would think that means that someone who has less funds could buy in that $500,000 category of homes in that neighborhood. So tell me, because he's raised a constitutional question. He said your means are not appropriate. So I'm asking you, how do you get to your reason, your justification, and I assume it's compelling or reasonable or whatever, in my hypothetical? Is it they pay 20% less than what that would be? They pay, what, $400,000? I mean, tell me, how does that work? Because that's what, as I understand, Mr. Rother is saying, you're putting this burden on us and what are you accomplishing? How does that work? Well, what we're accomplishing is that every new development, every large new development that comes to the town has some percentage of housing that is more affordable. And I apologize, Your Honor, I don't have the exact numbers of the discount or the low cost. But can you even tell me there is a discount? Yeah, the general idea is that you have to make it. I'm not talking about the general idea. Yes, there would be a discount. If you're facing a constitutional challenge, you should be able to tell us that the compelling reason is accomplished because that person can get into that $500,000 neighborhood and pay less money for that seventh house. Other than just going to the county's coffers, tell me how that's accomplished. What it accomplishes is... No, no, no, not what it accomplishes. How is it accomplished? By requiring the developer to make... To pay you money. To either make... No, no, no, to pay you money because in this case they paid you money, right? That is an alternative. But they paid you... Wait a minute. They took the alternative. They paid you money, right? Yes. How is that going to make the seventh house cheaper for the person who is meant to be helped by the reduced low-cost housing? That's a simple question. Maybe I'm missing something in my question, but isn't that what you're supposed to be doing today? Telling us why the Constitution is not valid because there is a compelling or rational basis for this program. What is it? And how is it accomplished? So the fee in lieu, you're correct, Your Honor, would not make that seventh house more affordable. What it does, it gives the town the ability, it gives the town funds to use, and it's not in the record currently because we're at the 12B6 stage, how exactly the town uses the funds to make affordable housing. You want us to affirm a dismissal, right? Based on the statute of limitations, Your Honor, yes. That was the decision of the district court is that their claim, to the extent they have made one, arose in either 2014 or 2015. So I don't think the panel needs to reach a decision on the underlying merits of the program because this claim is a... Well, he's saying that they weren't injured at the time that the district court said that they were because it was merely an expectation of future injury. And in our Tommy Davis case, we said that a 1983 due process claim accrued when the plaintiff there paid the fees. So why isn't that applicable here, that the claim does not accrue until they pay the fees? Because in that case it's different because in that case it was the application of an ordinance that is a general ordinance that would not have applied to the plaintiff itself unless and until they applied for the permit and were required to pay the fee. What we have here is the ordinance was applied to the plaintiff back in 2014 or 15. At that point, and this is from Kuntz v. St. John's River Management District, a U.S. Supreme Court case from 2013, in that case what the court said is you cannot condition a government benefit  But didn't Kuntz recognize that there's a difference between the conditional permit and the actual taking, right? I thought I read in that opinion that the court acknowledged that this is not to say that a condition on a permit actually takes something, but it's an unconstitutional condition sort of claim, but once something's taken they acknowledge that that's different. What they said was there was a constitutional injury at the time that the condition was imposed, that the constitutional violation as alleged in that case and that they didn't reach some of the merits of the case. Well, maybe that's acknowledging that plaintiffs could have had a different claim, right? Plaintiffs could have tried to bring a permit conditions claim and you would have had rightness challenges, et cetera. But they didn't. Instead they brought a takings claim, a straight-up takings claim, right? Because you actually took something. Is that a distinction that we acknowledge in this context? I don't believe it is, Your Honor, because the taking in this case is, I mean the constitutional violation that they're alleging is we were required to pay this fee because of this program that was applied to us. Let me ask you what keeps tripping me up. Is it that how can there be a taking of property, which is real property, when they don't own any property? They don't own the property. So this permit was granted with the condition before they owned the property and then the complaint doesn't specify exactly when they got it. It says some in 2015, 2016, which unhelpfully for you straddles where the statute of limitations cutoff would be. How could there be a taking of property if you don't yet own the property? I think what they allege in their complaint, it was their agent who obtained the special use permit. So I think they are bound by their agent. Sure, sure. But how at that moment, how could there have been a taking in 2014 when nobody, none of the parties who are interested, who this regulation was imposed on, none of them owned the property, right? So the government could say, if you ever acquire property, one day you might be required to pay it to us. But they didn't own any property at that point. And that's why the district court made the distinction and said it either arose in 2014 when the special use permit was issued based on it being their agent, or it arose in 2015 when they purchased the property. When they purchased the property, they were aware of the special use permit. They were involved in the process because it was their agent who obtained the permit. At the very least, when they came into possession of the property, they had the right at that point to file an appeal and challenge the constitutionality of the special use permit and say that this requirement that we have this condition to either dedicate low-cost housing or to pay a fee in lieu is unconstitutional. And so that... But would you have brought, you know, there would have been ripeness arguments about that, right? Did they file this appeal? Were they actually going to use it for this purpose? I think the... So here's how I look at it. I think the injury was present in 2014 and 15. The damages that flow from that injury increased as they paid the fee. But the injury itself and the constitutional condition, allegedly unconstitutional condition imposed on them was imposed on them in 2014 or 15. So when you've got a takings case, what you look at is the government's action. You don't look at the plaintiff's action. You look at what the government did. And what the government did is require them to pay this fee in 2014 or 15 depending on when they purchased the property. So, you know, when they made a payment in 2017, you look at, okay, what government action required them to make this payment? It's the special use permit that was issued in 2014 or 15. There was no new government action requiring any payment after 2014. So when they say, well, we wrote a check... I'm not necessarily disagreeing with you that there might be some sort of claim that could be made then, but I worry about the implications of this argument that, you know, as a citizen, for instance, I know I'm going to have to pay certain fees, right? Like if I, you know, go to a particular government agency and I'm going to have to pay a certain fee. And I can foresee that, but I haven't actually paid it, right? Because I haven't taken certain actions. And to say, well, you paid it today, but, you know, you knew that this law was enacted 10 years ago and that if you ever wanted to avail yourself of the privileges of that law, you were going to have to pay that fee. You know, no one thinks that accrued 10 years ago. How's that different? Because if you're talking about a general ordinance or a general thing that applies across the board to everyone, but it doesn't apply to you until you apply to take advantage of the program, then that's when you are injured. So in the impact fee context, the cases that plaintiffs decide in the impact fee context, that is a general ordinance that is applicable to the entirety of the population that doesn't get applied to you unless you're injured. No, some of those were pretty specific, right? It was like you had to get approval for a certain development to hook up to the water utilities. It wasn't just as a matter of course, right? The developer went and had to find out, does this apply to me and what am I going to have to pay? Those seemed a little more similar than you give them credit for. Well, they do apply. The developer might have asked questions about how the ordinance applied, but that doesn't change the application of the ordinance. That's like this. I mean, everyone knows this regulation applies to, you know, anyone who wants to build in a certain way, but, you know, it doesn't actually affect, injure you, affect your pocketbook until they say I'm not going to give you a certificate of occupancy unless you pay me X dollars. So I think you're correct in that in 2013, they couldn't have brought suit challenging the ordinance and saying we're planning to develop and we know this is going to be applied to us and on the front end before it is, we want to challenge it because there's no injury. Here, what they did was they did apply. They got the specialist permit. The ordinance was applied to them. They knew to the penny what they were going to have to pay. So it's different than a general ordinance that doesn't apply to you until you, you know, take advantage of the program. This is a specific application of the ordinance to plaintiffs, and at that point, that is the injury, the government, the alleged injury, the government applying the ordinance to you, requiring you to do something that you contend is unconstitutional. Yeah. You agree it's not like national advertising, though, right, where that's a regulation that we said it encumbered the property, right? This permit restriction doesn't run with the property, right? You can use it for other purposes or they could have not purchased it, et cetera, that there's a mismatch with that case. I agree it's not an exact match, Your Honor, for that reason, but the point, I think, of national advertising is that it is the government action that you're looking at, the government action in national advertising was the requirement that you remove this billboard. That is when the injury occurred, not when they actually had to comply. I think the same kind of analysis is here. The injury occurred when they were required to make this payment pursuant to the special use permit, not when they actually complied with the special use permit and made the payment. Well, you might want to rephrase that. You said the injury occurred when they were required to make the payment. Now, they weren't required to pay the day the permit came out, right? They were required to pay if they wanted a seventh certificate of occupancy, right? Right, which they sought and received. So, yeah, I agree that they could have decided not to develop and they wouldn't have had the same amount of injury as far as dollar amount, but they had the same injury and that they had an allegedly unconstitutional condition imposed on their development. And that is what Kuntz said is a constitutional injury that is available to redress. And Kuntz specifically said it doesn't matter that they paid no money, that there was no actual loss of money. Because in Kuntz they were denied a permit, right? Correct, they did. But the injury was the unconstitutional condition, not the payment of a fee or anything like that. And the same thing we filed this morning, and I know Your Honors have not had a chance to see this, but we filed a Tenth Circuit decision that I believe is analogous here. In that case, there was a sidewalk requirement. The city said if you want to expand your business, you have to build a sidewalk. They issued that requirement to them in 2014. In 2016, the applicant got that amended to say, well, you can do the sidewalk or you can pay us a fee. And they filed suit in 2018. Within two years of the fee requirement, but not within two years of the original requirement to build the sidewalk. And the Tenth Circuit recognized that the injury was the requirement to comply with the regulation requiring the sidewalk. And they said your claim is barred by the two-year statute of limitations because you knew back in 2014 that you had this obligation. And I think it's the same thing here. If they had decided not to build on the property, would they owe the city any money? No. But it's not, again, it's not the payment of the money that is the injury. It is the requirement imposed on them to pay the money as a condition for building. So it's the condition, and that's exactly what Kuntz held. It is the unconstitutional condition that is at issue here. And the other distinction between this case and an impact fee case is the impact fee case is a straight-up fee. What was the name of your Tenth Circuit case? Your Honor, that is 2701 Mount Glen Court, LLC versus City of Woodland Park. It's a 2021 Tenth Circuit case. We filed a supplemental authority this morning. The distinction here between the impact fee cases is this was a fee in lieu. And what that means is you have the choice of doing the affordable housing units or you can pay the fee. So the application of that choice, that you have to do one of these, one of these two things, as a condition to develop, was imposed on the plaintiff in 2014 or in 2015 when they purchased the property. So they knew what the injury was. And the injury was the condition, not the payment. That's correct, Your Honor. And that is exactly what Kuntz held. It doesn't matter that you didn't pay any money. It doesn't matter that there's not any actual taking here. What matters is that you were required to do this condition. That's what Nolan Dolan applies to is does the required payment have a rough proportionality to what you're doing. All of this could have been litigated in 2014 or 15. It would have been the exact same legal arguments. It would have been the exact same analysis. The only difference here is that they went through with the permit before filing their suit. They weren't required to do that under Kuntz and under the... Again, Kuntz was acknowledging that you don't have to have an actual taking, right, because the permit was denied in that case, and the court said, we acknowledge you can have this unconstitutional conditions claim that you were denied a permit because you wouldn't give up these other constitutional rights. And that's a valid claim under Kuntz, but it's not the only possible takings claim that can be brought, right? The court didn't do away with traditional takings claims where you own property and the government demands to take part of that property, and those are different. Yeah, well, the demand to take the property was the special use permit, and that's... But they didn't take it until it was actually turned over to the government, right? They didn't receive it until it was turned over. They took it when they made the requirement. They demanded it. When they said, you can't do this. You can't do what you want to do. You cannot build your units unless you pay us this fee. And they put the restriction. That's when, to the extent there's a taking, that is the taking, because, again, no action taken by the government after that point. So when they wrote a check in 2017 or 18, what you have to look at is why did they write that check? What government requirement forced them to write the check? And what it is is a special use permit, which is different than the impact fee cases when they wrote the check. And you say, what required them to write the check? It's the application of the ordinance to them at that point. So the government action in the impact fee cases was when they wrote the check because that's what the government said. That's when the government said, you have to write us a check. Here, the government said, you have to write us a check in 2014 or 15. It doesn't matter when the plaintiff actually wrote the check. In fact, that's what you say is the distinguishing factor with Tommy Davis' construction case. Correct. And the Quality Built Homes case relied on by plaintiffs as well. And, you know, I heard plaintiffs' counsel argue, in response to your Honor's question, what is illegal is this requirement that we do this. That's what they say is illegal. That's what they say violated their rights. That's what occurred back in 2014 or 15. And so, I mean, I think the district court applied the correct law, and we certainly believe that the taking to the extent it occurred, we deny that there was a taking. We think this was a valid land use regulation. But we didn't really reach that issue at the district court because of the statute of limitations. I think it's the same thing here. Unless your Honor has any questions, I believe I'm out of time. Thank you, Mr. Hotdog. Thank you. Mr. Grover, you have some time reserved. Thank you. I'd like to address a few things that came up. First, the 10th Circuit case that was filed this morning, I haven't read it. I just found out when we walked in here this morning that it was there. But I will say this. Without having read it, a sidewalk is infrastructure. So that's something that's typically required to be built during a project. So it would make sense to have a present obligation at that time so that the requirement for the improvement was present. It's different than what we have here, which is a payment at the end of a project. Taking didn't occur until the very end. And the concept of whether we had an opportunity to bring a claim back in 2014 or 2015, I think is a bit of a red herring because it would have been a different claim. Statutes of limitation don't occur for different claims all at the same time. It's not a transaction or occurrence test. It's when a claim occurs. And the difference between Nolan, Dolan, and Koontz, those all came to the Supreme Court from cert and state law proceedings. How would it have been a different claim? Because our property wouldn't have been taken without just compensation. It would have been perhaps a state law claim for declaratory relief to prevent a future injury. A 1983 claim that we brought here. You knew at that point that that's what the obligation was if you built the property. That's correct. But we have a system with accrual that accrual does not occur when we know something might happen in the future. Accrual occurs when there is an injury and there is a complete and present cause of action. Judge Rushing said exactly what the court observed in Koontz, just because coming out of these certiorari from state law proceedings, they were looking at whether the dedication, the taking, if that occurred, would it have violated the takings clause. This case is different because we actually went through with it. We paid the fee and we said, you took our property, now I get it back. It's a different set of circumstances. And even the court, Judge King in concurrence in Koontz, made clear that everyone was in agreement that no taking actually occurs and there's potentially no claim for damages until that fee or the dedication or whatever it is is made. And the accrual standard that we have is there for good reason. Even when disputes are real, the injury may be uncertain. We have a system that allows parties to wait until they suffer an actual injury, an actual deprivation of their rights or a loss of money or whatever it is, before they have to seek redress for that. The implications are enormous in a system in which a party's time to file suit is tied to a date on which it understands that it could be injured in the future. Litigation is not fun. It's not something that people do until they find it absolutely necessary. That is why our system is set up the way it is. It seems to me all of the elements of a claim is there. The condition is on you and you have to satisfy the condition by making a promise. And that promise was quite quantifiable because you knew the exact amount. What else would be left in terms of the condition is burdening you, you know what the burden is, and you know the response was you had to promise to pay it, and you know how much you had to pay. Why wouldn't that be a present and clear injury? Ronald, I'll take on one piece of what you said, which was a promise. This is not a contract. This is a permit that gave us the opportunity. You didn't promise to pay? We were given a choice, and we took the choice of least resistance. You always go back to choice. Okay, you did have a choice. But once you make the choice, the choice inuited into a promise, didn't it? A promise implies that we would have had to make that payment regardless. We understood that that fee would have to be paid if the project went forward, and that was not a certainty in 2014. But you promised to pay. You did. We accepted a permit that required that payment to be made if and when we requested certificates of occupancy. The point is, Your Honor, the claim under state law or whatever it is to try to remove that condition is a much different thing than a Fifth Amendment takings clause claim under 83 to seek redress for a taking that has actually occurred. Just because we had a different claim. I'm not sure you have a taking at all, but I'm not sure about that. But that's not before us. And the Supreme Court and Nick made very clear that with a taking, there is no requirement to exhaust administrative remedies. It would be an odd standard if our time to file a taking claim post-deprivation would be tied to some kind of administrative remedies pre-deprivation process that we have no obligation to undertake in the first place. So, Your Honor, I... I disagree with your colleague who said that the municipality has a process for you to appeal it, and if you win, then you can proceed without paying any money. Do you disagree with that? I'm sorry, Your Honor, I don't understand. Counsel said that you could, there's a process for you to redress this through appeal. I... You heard, did you hear that? Yes, I understand that. I don't want to get into intricacies of land use under North Carolina law. You're getting into what I'm asking you. Yeah, understood. The point is whether we had a right to appeal under North Carolina statute is independent of whether we have a right for compensation for the taking that occurred five years ago. No, it has a lot to do with your whole theory of when your claim accrued. It has to some degree. If you don't think it does, that's fine. Your Honor, I would say it certainly would dictate when any state law claim may have accrued, but it doesn't affect when my federal takings claim for a completed taking has occurred because there is no taking until I've actually been, I give up any property. Well, I see that my time is out. I'm happy to address any other questions. If not, I thank you all for your time. You can take 30 seconds to close if you like. I just wanted to thank you for your time. I'll ask that the court reverse the district court and remand for further proceedings. One procedural point, the court declined to exercise supplemental jurisdiction on the grounds that all federal questions had been dismissed. So I think if the court does decide to reverse, I think the proper procedure here would be to reverse remand for the proceedings and to reinstate those state law claims. Thank you. Thank you. Thank you both, counsel, for being here. We appreciate your arguments. And we can't come down and greet you as we do in our normal Fourth Circuit tradition, but know very much we appreciate your arguments and your presence. Wish you be safe and stay well. Thank you all. Take care. Thank you, Your Honor.
judges: Roger L. Gregory, Stephanie D. Thacker, Allison J. Rushing